E-FILED
Wednesday, 06 August, 2025  03:26:38 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **RAYMOND A. NICKLIN, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 24-cv-1133** |
| | ) | |
| **COSTCO WHOLESALE CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Costco Wholesale Corp.'s ("Costco") Motion for Summary Judgment. (D. 18[1]). For the reasons stated below, Costco's Motion is GRANTED.

## I.     JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, (the "ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII").[2] Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred in East Peoria, Illinois.

## II.     LEGAL STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

---

[1] Citations to the docket are abbreviated as (D. __).
[2] Nicklin's Complaint also initially included a claim for discrimination under the American with Disabilities Act ("ADA"), 42 U.S.C. § 2000e. He later improperly filed an amended complaint, (D. 16), which did not include an ADA claim. The amended complaints were stricken as improperly filed, and Nicklin did not subsequently attempt to seek leave of Court to amend his complaint in compliance with Federal Rules of Civil Procedure 15 and 16. *See Text Order* entered on 02/07/2025. Nicklin did, however, clarify testify that he is no longer pursuing an ADA claim. Accordingly, Nicklin's ADA claim is dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b).

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex*, 477 U.S. at 321. A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After a properly supported motion for summary judgment is made, the adverse party "may not rest upon mere allegations…, but…must set forth specific facts showing that there is a genuine issue for trial." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

"In deciding motions for summary judgment, courts must consider the evidence as a whole," *de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546, 559 (7th Cir. 2019), and "view[ ] the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party." *Laborers' Pension Fund v. W.R. Weis Co., Inc*., 879 F.3d 760, 766 (7th Cir. 2018) (internal citation omitted). The court, however, will not draw inferences that are "supported by only speculation or conjecture," *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr*., 328 F.3d 890, 892 (7th Cir. 2003). A party who bears the burden of proof on a particular issue must affirmatively demonstrate, with specific allegations supported by appropriate citations to relevant admissible evidence, that a genuine issue of material fact exists. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923–24 (7th Cir. 1994).

### III.    COSTCO'S REQUEST TO STRIKE

Before turning to the facts of this case, we begin with addressing Costco's request to strike Nicklin's responses to Costco's Statement of Undisputed Material Facts Nos. 13, 14, 20-21, 24-

28, 31-32, 34, 36-38, 41-56, and 60-62, and any additional, unsupported facts raised for the first time in Nicklin's "Argument" section of his Response for failure to comply with Central District of Illinois Local Rule 7.1(D). (D. 24, pp. 2–3).

Local Rule 7.1(D) opens with a warning that all summary judgment filings, including responses, must comply with its requirements and that "filings not in compliance may be stricken by the court." The Seventh Circuit has repeatedly upheld district courts strictly enforcing their local rules, including "by accepting the movant's version of facts as undisputed if the non-movant failed to respond in the form required." *See Osborn v. JAB Management Services, Inc.*, 126 F.4th 1250, 1255 (7th Cir. 2025) (citing *Waldridge*, 24 F.3d at 924 (setting forth the Seventh Circuit's willingness to strictly enforce the district court's local rules)). Further, *pro se* litigants are presumed to have full knowledge of applicable court rules and procedures. *See Metro Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002).

Rule 7.1(D)(2)(b) provides that a response to a summary judgment motion must, in separate subsections, "'list by number each fact from' the movant's summary judgment motion that is undisputed and material, disputed and material, disputed and immaterial, and undisputed and immaterial." *Osborn*, 126 F.4th at 1254 (citing CDIL–L.R. 7.1(D)(2)(b)(1)–(4)). "*Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page. Include as exhibits all cited documentary evidence not already submitted by the movant.*" CDIL–L.R. 7.1(D)(2)(b)(2)–(3) (emphasis added). Similarly, any additional material facts must be set forth in a separate subsection that lists by number each additional material fact and "must be supported by evidentiary documentation referenced by specific page." *Id.* at 7.1(D)(2)(b)(5). These requirements align with Federal Rule of Civil Procedure 56(c) "which, among other things,

requires a party opposing summary judgment to address the moving party's assertion of facts." *Osborn*, 126 F.4th at 1254.

Federal Rule of Civil Procedure 56(e) also gives district courts the authority to take appropriate measures when a party "fails to properly address another party's asserting of facts," including by "considering the fact undisputed for purposes of the motion" and "grant[ing] summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." *See Osborn*, 126 F.4th at 1254; *see also* Fed. R. Civ. P. 56(e)(2)–(3). Consistent with Rule 56(e), this Court's Local Rules provide that "a nonmovant's 'failure to respond to any numbered fact' in the movant's motion for summary judgment is 'deemed an admission of the fact.'" *Id.* (quoting CDIL–L.R. 7.1(D)(2)(b)(6)).

Here, Nicklin's Response to Costco's Motion for Summary Judgment fails to respond to Costco's sixty-two undisputed material facts as required by Rule 7.1(D)(2)(b). Instead, Nicklin's Response opens with 42 numbered paragraph which do not separate Costco's facts by number into separate subsections indicating whether the fact is undisputed and material, disputed and material, disputed and immaterial, or undisputed and immaterial. *Id.* at 7.1(D)(2)(b)(1)–(4). Additionally, Nicklin's denials either fail to deny the fact submitted, are not supported by the evidentiary documentation referenced, and/or only respond with an argument. Therefore, because Nicklin did not respond to the statements of undisputed facts in conformance with Local Rule 7.1(D), the Court accepts as true, for purposes of summary judgment, those facts that Costco properly supported.

Nicklin's Response also did not set forth additional material facts as required by Rule 7.1(D)(2)(b)(5). Rather, Nicklin introduced additional facts in the "Argument" section of Response. This not only deprived Costco of the opportunity to reply to Nicklin's additional material facts as set forth under Rule 7.1(D)(3)(a), but also would require the Court to scour his

briefing to discover facts that may be material and help his case. The Court declines to do so, and deems any additional facts not presented in accordance with Rule 7.1(D)(2)(b)(5) stricken. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

## IV.    BACKGROUND

### A.  Factual Background

Costco is a membership-based warehouse club that sells a wide variety of goods, often in bulk, to its members. Costco operates hundreds of warehouses throughout the United States, including a warehouse located in East Peoria, Illinois. (D. 19, ¶ 2; D. 22, ¶ 1). Costco publishes its employment policies and procedures in its Employee Agreement. (D. 19, ¶ 4; D. 22, ¶ 1). Plaintiff Raymond A. Nicklin ("Nicklin"), is a White male born on November 25, 1953. (D. 19-20). On October 10, 2012, Costco hired Nicklin to work as a receiving clerk at its East Peoria, Illinois, warehouse. (D. 19, ¶ 3; D. 22, ¶ 1). Nicklin was trained on Costco's policies and received, reviewed, and signed a copy of Costco's 2016 Employee Agreement. (D. 19, ¶ 9; D. 22, ¶ 1). Section 4.8 of the Employee Agreement states that an employee may be terminated for good and sufficient cause, and Section 11.3 outlines causes for termination. (D. 19, ¶ 6; D. 22, ¶ 1; D. 19-6).

Throughout the course of Nicklin's employment, Costco had an established practice of donating damaged goods to the Peoria Rescue Ministries ("PRM"), which sells the goods to indigent individuals. (D. 19, ¶ 10; D. 22, ¶ 1; D. 19–2, ¶ 9). PRM delivery drivers pick up the donated items from Costco's receiving dock, where Nicklin worked. (D. 19, ¶¶ 11; D. 22, ¶ 1). Under Section 11.3(15) of Costco's Employee Agreement, it is a terminable offense for employees to take home damaged goods, such as those donated by Costco to PRM. (D. 19, ¶ 12; D. 22, ¶ 1).

In October 2018, Erik Corona, Costco's Meat Department Manager, learned that his sister-in-law had received three bags of damaged Costco dog food acquired by Nicklin, and reported the situation to Costco's General Manager Dan Iaquinta. (D. 19-8, pp. 7-8; D. 19-2, ¶ 11). Iaquinta asked Corona to submit a written statement, and on October 15, 2018, Corona sent Iaquinta the following e-mail:

> On October 10th it was brought to my attention that my sister-in-law(Jennifer), who I am related to by marriage, was given 3 bags of dog food the week of October 3rd. My wife (Delaney) was told by her sister that Raymond Nicklin acquired 3 bags of dog food from Costco. 2 Kirkland Brand, and 1 Nature's domain. All 3 bags were neatly taped up and brought to her home by himself. When Raymond dropped off said dog food he explained, "If dog food is torn or ripped, you can tape it back up and take them home."
>
> My wife was given a bag of the Kirkland Signature brand. I do not feel comfortable with it, given the uncertainty of the situation.
>
> Ray is somewhat related to my sister-in-law, due to the fact that her husband's mother is dating Raymond.
>
> Attached are pictures of the two bags I do not have.

(D. 19-9, p. 2).

Iaquinta then initiated an investigation and set up a meeting with Nicklin and Corona. (D. 19, ¶ 16; D. 19-10, p. 2; D. 22, ¶ 4). At this meeting, Nicklin said PRM donates items to him, and he then donates the items to others, taking no personal gain. (D. 19, ¶¶ 17-18; D. 22, ¶ 4). That same day Nicklin submitted a written statement which stated that in exchange for PRM giving him items, he either paid for the item, donated other items, or donated his time. (D. 19, ¶ 19; D. 19-11). He also stated that PRM usually had him put the name of the person it was going to on the item. *Id.* Regarding the dog food at issue, Nicklin stated that PRM donated it to him, and he in turn donated it to another person. *Id.* In Corona's photographs of the dog food submitted, no recipient's name was written on the dog food.

On October 18th Iaquinta went to PRM's thrift store and met with PRM's Manager Gordon Mills and Maintenance Coordinator Rod Repke. (D. 19, ¶¶ 20-21; D. 22, ¶¶ 5-6). Both Mills and Repke denied PRM having any arrangement with Nicklin to donate him goods, and that PRM had never received any compensation from Nicklin for goods. *Id.* Based on the information received from PRM, Iaquinta asked Nicklin to submit a more detailed written statement about how he obtained the dog food. *Id.* In his October 18th statement, Nicklin changed his story claiming that he donated money to PRM and to PRM's delivery driver Charles Taylor. (D. 19, ¶¶ 22-24; D. 22, ¶¶ 6-7). Specifically, Nicklin wrote that he would meet Taylor at PRM's store or elsewhere and that in return for the items he gave Taylor money. (D. 19-12).

On October 19th, Iaquinta met with Taylor at Costco and Taylor submitted a written statement. In both his meeting with Iaquinta and in his written statement Taylor said that Nicklin approached him prior to the meeting and asked him to tell Iaquinta that he had paid for the dog food when he had not. (D. 19, ¶¶ 26-27; D. 22, ¶¶ 10-11; D. 19-2, ¶ 19; D. 19-13). Nicklin denies asking Taylor to say this but has since admitted that he lied during Costco's investigation about paying Taylor for the dog food. (D. 22, ¶ 8).

Nicklin continued to insist that he had an agreement with PRM's Senior Director Lee Burnham regarding PRM donating Costco items to Nicklin. (D. 19, ¶¶ 30-32; D. 22, ¶¶ 13-15). On October 19th Burnham and PRM's Residential Program Director Brian Butler e-mailed Iaquinta denying any agreement between PRM and Nicklin and informing Iaquinta that PRM drivers were warned about Nicklin's frequent attempts to orchestrate "deals" for donated goods which had been going on for years. (D. 19, ¶ 32; D. 22, ¶ 15).

Iaquinta ultimately determined that Nicklin's conduct violated multiple subsections of Section 11.3 of Costco's Causes for Termination, including but not limited to:

- Section 11.3(2) – "Violations of Company policy . . . including . . . "interfering with an investigation."
- Section 11.3(10) – "Serious misconduct of any kind. . ." and
- Section 11.3(12) – "Any conduct or relationship that jeopardizes your ability to perform your job responsibilities safely, competently and/or honestly."

(D. 19, ¶ 33; D. 22, ¶ 16).

On October 22nd, Iaquinta issued Nicklin an Employee Counseling Notice and suspended his employment pending further review.  (D. 19, ¶ 35; D. 22, ¶ 18). Costco's District Vice President, Executive Vice President, and Senior Vice President each reviewed Iaquinta's investigation and approved his recommendation to terminate Nicklin's employment. (D. 19, ¶¶ 36-37; D. 22, ¶ 19). On October 25, 2018, Nicklin's employment was terminated. (D. 19, ¶ 40; D. 22, ¶ 21).

### B.  Procedural History

On July 23, 2019, Nicklin filed an unverified Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age (64 years old), race (White), and disability status (cardiac disorder) between June 20, 2018, and October 25, 2018. (D. 19-19, "Unverified Charge"). The Unverified Charge alleged that he was harassed because of his age by Iaquinta, Corona, and Eduardo Castro because: (1) Iaquinta and Castro frequently called him "old fart;" (2) Castro told him he acted worse than his youngest child; (3) Iaquinta and Castro frequently asked him when he was going to retire; (4) Corona would frequently yell at him and order him around even though he was not his manager; and (5) Iaquinta and Corona accused him of misconduct. *Id.* at p. 3. Nicklin alleged these comments created a hostile, intimidating, and offensive work environment that interfered with his ability to perform the essential functions of his job. *Id.* Nicklin also alleged that similarly situated non-white employees under the age of 40 were not suspended under similar

circumstances. *Id.* at pp. 3–4. On August 29, 2019, Plaintiff filed a nearly identical Verified Charge

with the EEOC, broadened the dates of discrimination to "2016 – October 25, 2018."(D. 19-20, p.

1). On January 22, 2024, the EEOC issued a Notice of Right to Sue Letter, without deciding the

merits of Nicklin's claims. (D. 1, p. 9).

On April 3, 2024, Nicklin filed a Complaint with this Court alleging discrimination because

of his age and race in violation of the ADA, ADEA, and Title VII. (D. 1). Nicklin has since

withdrawn his ADEA claim. In support of his discrimination claims, the Complaint contains a

laundry list work-related issues involving another Costco employee Eduardo Castro (Hispanic) in

2015 and 2016. *Id.* at pp. 6–7. Regarding his age discrimination claims he alleges that Costco

employees Chris Melton and Mike Bland, at unknown dates and times, called him "old far,

grandpa, and senior citizen." *Id.* at p. 7. Nicklin also claims that Castro submitted a "false and

malicious" statement to Iaquinta concerning the dog food based on his race and age, and in

retaliation for Nicklin previously complaining to management about him. *Id.* at pp. 7–8. Nicklin

also claims that Iaquinta's investigation was biased, threatening, and incomplete and that his age,

race, and retaliation were the reason for his suspension and termination. *Id.* at p. 8.

Costco has now moved for summary judgment, arguing Nicklin's claims of discrimination

and harassment that occurred prior to September 26, 2018, are time-barred and that Nicklin failed

to exhaust his retaliation claim. (*See* D. 18; D. 19). Costco further asserts that even if Nicklin's

claims were not procedurally barred, they fail on the merits. *Id.* This Order follows.

## V.    DISCUSSION

### A.  Statute of Limitations:

Prior to filing a Title VII claim for discrimination in federal court, a plaintiff must first

exhaust administrative remedies by filing charges with the EEOC and receiving a "right to sue"

letter. *Chaidez v. Ford Motor Co.,* 937 F.3d 998, 1004 (7th Cir. 2019). Charges must be filed with the EEOC within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1); *see also Serir v. Cmty. Coll. Dist. No. 514*, 2022 WL 807864, at *2 (7th Cir. Mar. 16, 2022). Failure to file a timely charge precludes a subsequent lawsuit under Title VII. *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 860 (7th Cir. 2005). Discrete discriminatory employment actions, such as termination, are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or relate to other acts. *Id.* Therefore, "each discriminatory act 'starts a new clock for filing charges alleging that act,' and charges not filed within 300 days of the act in question are not actionable." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Similarly, to sue under the ADEA an employee must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1)(B); *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir. 2004). The date of the unlawful practice "is when a 'final, ultimate, [and] non-tentative' decision was made for which the employee receives unequivocal notice." *Draper v. Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011) (quoting *Flannery,* 354 F.3d at 637). Failure to timely file a charge with the EEOC will ordinarily bar an ADEA claim. *Chakonas v. City of Chicago,* 42 F.3d 1132, 1135 (7th Cir. 1994).

Here, on July 23, 2019, Nicklin first filed an unverified charge (the "Unperfected Charge") with the IDHR and EEOC alleging Costco discriminated against him on the basis of race, age, and disability status between June 20, 2019–October 25, 2018.[3] (D. 19-19, pp. 2, 7). Later, on August 29, 2019, Nicklin filed a verified charge (the "Perfected Charge"). (D. 19-20, p. 2). The allegations are nearly identical to those contained in the Unperfected Charge, except Nicklin expanded the

---

[3] Nicklin has since withdrawn his ADA claim. *See* FN. 2, *supra.*

dates of discrimination to "2016 – October 25, 2018." *Id.* For charge to be timely, the alleged discriminatory action must have occurred on or after September 26, 2018 (300 days before Plaintiff filed his Unperfected Charge). Therefore, Nicklin's ADEA and Title VII claims that occurred prior to  September 26, 2018, are time barred.

Similarly, all of Nicklin's harassment claims are time barred. His complaint frames several workplace incidents between August 10, 2015, and October 4, 2016, as harassment. (D. 1, pp. 6– 7). While Costco contests that Nicklin never reported age or race-based harassment to management between 2015 and his termination in October 2018, this argument is unnecessary. Because the alleged harassment were all separate, discrete acts that occurred more than 300 days before Nicklin filed his Unperfected Charge (*i.e.,* before September 26, 2018), the claims are time barred.

Further, Nicklin did not respond to Costco's statute of limitations argument, or otherwise attempt to argue that the "continuing violation doctrine" or equitable tolling should extend the 300-day limitations period.

**B.  Nicklin Failed to Exhaust His Retaliation Claim:**

A plaintiff "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Chaidez*, 937 F.3d at 1004. A plaintiff cannot allege claims in a lawsuit that are not included in his EEOC charge because the purpose of the EEOC charge is to notify the employer of the nature of the charges against it, and to provide the EEOC with a basis for undertaking an investigation of the allegations as well as to conciliate between the parties. *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000); *Cheek v. Western and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

An exception to this rule is a plaintiff may allege facts in his complaint different from those in his EEOC charge only when they are "like or reasonably related" to the allegations contained in his EEOC charge. *Cheek*, 31 F.3d at 500. The claims in a federal complaint and the claims in an EEOC charge are "like or reasonably related" if the factual relationship between them, at a minimum, "describe the same conduct" and "implicate the same individuals." *Id.*

Here, it is undisputed that Plaintiff's Unperfected and Perfected Charges did not include a claim for retaliation. (D. 19-19, pp. 3–6, 7; D. 19-20, pp. 2, 3–6). For Nicklin's retaliation claim to survive, it must be reasonably related to the allegations contained in the EEOC charge and "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. This includes examining the conduct described and the individuals implicated in claim. *See Chaidez*, 937 F.3d at 1005.

Nicklin's EEOC charge includes (1) age-based harassment from co-workers, including Iaquinta, Castro, and Corona, from June 20, 2018, to October 19, 2018; (2) age and raced-based suspension by Iaquinta; and (3) age and race-based termination by Iaquinta. (D. 19-20, pp. 3-6). Nicklin contends that Costco did not suspend or terminate similarly situated employees who were non-white or under the age of 40. *Id.* The charges contain no allegation of retaliatory conduct. *Id.*

In the Complaint, Nicklin alleged discrimination based on age, disability, race, and retaliation. (D. 1, p. 2). Specifically, he claimed Corona's October 12, 2018, complaint about the dog food was retaliatory for Nicklin's prior complaints about Corona's "harassing conduct" and Iaquinta's investigation was biased due to Nicklin's disability, age, and race. *Id.* at p. 8. To support his retaliation claim, Nicklin describes multiple incidents of verbal harassment by Castro and Corona between August 2015 and October 2016, which he claims to have verbally reported to Iaquinta. *Id.* at pp. 6–7. Issues of timeliness aside, this was not the misconduct of which the EEOC

charges placed Costco on notice or provided an opportunity for settlement. As the Seventh Circuit stated, "[a]n aggrieved [plaintiff] may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. This limitation ... gives the employer some warning of the conduct about which the [plaintiff] is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp*., 966 F.2d 1104, 1110 (7th Cir. 1992).

Nicklin cannot bootstrap his retaliation claim onto the charges filed with the EEOC. Here, the EEOC charge alleged discriminatory harassment, suspension, and termination based on events from June to October 2018 (later expanded to start in 2016)., but it makes no mention of retaliation or verbal harassment from 2015 to 2016. (D. 19-19; D. 19-20). Although Nicklin claims Corona's 2018 complaint was retaliatory for Nicklin's earlier reports to Iaquinta, he describes the events "at far too high a level of generality." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019). The retaliation allegation in Nicklin's Complaint describes hostilities that were never mentioned in the EEOC charge. Therefore, the EEOC charge never gave Costco reasonable notice of Nicklin's retaliation claim, nor did it provide Costco and the EEOC an opportunity to resolve his concerns before they ripened into this suit. Thus, Nicklin's retaliation claim is barred for failure to exhaust administrative remedies.

### C.  Nicklin's Title VII - Racial Discrimination Claims:

"Title VII's disparate-treatment provision bar employers from internally discrimination against their employees on the basis of race, color, religion, sex, or national origin." *Ames v. Ohio Dept. of Youth Serv.*, 145 S.Ct. 1540, 1545 (2025) (citing 42 U.S.C. § 2000e-2(a)(10)). To establish a prima facie case of age or race discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) his job performance met the employer's legitimate expectations; (3) he suffered

an adverse employment action; and (4) another similarly situated individual who was not in the

protected class was treated more favorably than the plaintiff. *Peele v. Country Mut. Ins. Co.*, 288

F.3d 319, 326 (7th Cir. 2002); *see also Burks v. Wisconsin Dep't of Transportation,* 464 F.3d 744,

750-51 (7th Cir. 2006).

In assessing a Title VII claim, courts often use "a three-step burden-shifting framework"

laid out in  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973), in order to "expeditiously and fairly" answer the question of whether "the defendant

intentionally discriminated against the plaintiff." *Ames*, 145 S.Ct. at 1545 (internal citations

omitted). The Supreme Court recently explained *McDonnell Douglas*'s three step-inquiry as

follows:

> At the first step of the familiar three-step inquiry, the plaintiff bears the "initial
> burden" of "establishing a prima facie case" by producing enough evidence to
> support an inference of discriminatory motive. *McDonnell Douglas*, 411 U.S. at
> 802, 93 S.Ct. 1817. If the plaintiff clears that hurdle, the burden then "shift[s] to the
> employer to articulate some legitimate, nondiscriminatory reason for the
> employee's rejection." *Ibid.* Finally, if the employer articulates such a justification,
> the plaintiff must then have a "fair opportunity" to show that the stated justification
> "was in fact pretext" for discrimination. *Id.*, at 804, 93 S.Ct. 1817. A plaintiff "may
> succeed [under the *McDonnell Douglas* framework] either directly by persuading
> the court that a discriminatory reason more likely motivated the employer or
> indirectly by showing that the employer's proffered explanation is unworthy of
> credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

*Id.* Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v.*

*Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000).

> *a.   No evidence of discriminatory motive*

Here, Nicklin has failed to produce any evidence to support an inference of discriminatory

motive for his termination. In fact, he repeatedly denied his race was ever mentioned during any

of the alleged incidents of "harassment" and "discrimination" outlined in the Complaint during his

14

deposition. (*See* D. 19-1, pp. 44–46, 55, 63–64, 66, 68, 74, 87, 90, 96-98, 100, 103, 120, and 130).[4] Nicklin also never filed or otherwise raised complaints of discrimination based on age or race with Costco. Rather, most of Nicklin's complaints involve disputes with a Hispanic co-worker, Eduardo Castro (Hispanic), and were job-performance related. There is also no evidence that adverse employment action was taken as a result of these complaints.

Even assuming arguendo that Nicklin had met his initial burden at step one, his Title VIII claim must be denied, as he fails to demonstrate that he was meeting Costco's reasonable expectations and that similarly situated employees outside his protected class were treated more favorably. Moreover, Costco has presented evidence of a legitimate, non-discriminatory reason for terminating Nicklin's employment.

> ### b.  *Legitimate, Nondiscriminatory Reason for Nicklin's Termination*

Nicklin's employment was terminated because he violated Costco's Employee Agreement by soliciting and accepting goods that Costco had donated to PRM and then interfering with their internal investigation into the matter. (D. 19-2, ¶¶ 19-20; R. 19-13, p. 2). During Iaquinta's investigation he spoke with Nicklin several times about the dog food Corona's sister-in-law received and to several members of PRM's staff. Initially, Nicklin told Iaquinta that he had an arrangement with PRM where PRM would donate items to him, and then Nicklin would donate them to others. *Id.* at ¶¶ 13–14. Nicklin also changed his story, claiming that he donated money to PRM in exchange for donated goods. *Id.* at ¶¶ 16–17, 21–22. To Nicklin's detriment the record shows that every person Iaquinta spoke with on PRM's staff—including Manager Gordon Mills, Maintenance Coordinator Rod Repke, and Senior Director Lee Burnham—denied any such

---

[4] Pages cited refer to the document page number, not the deposition transcript page number.

agreement and confirmed PRM never received money or other donations from Nicklin. *Id.* at ¶¶ 14-15, 23; D. 19-14, p. 2.

When Iaquinta discussed his conversations with Mills and Repke with Nicklin, Nicklin then changed his story, claiming that he donated money to PRM and paid Tayler, PRM's delivery driver, for the donated dog food. *Id.* at ¶¶ 16–17, 21–22. He also continued to insist that he had an arrangement with Burnham. Iaquinta then followed up with Burnham who denied any such arrangement. In fact, Burnham called Nicklin's story "a bold-faced lie" and sent a follow up e-mail which stated that Nicklin trying to make "deals" with PRM drivers had been a problem for years. (D. 19-2, ¶ 23; D. 19-14, p. 2). PRM Director Brian also told Iaquinta that he has warned every delivery driver since 2014 about Nicklin's frequent attempts to make "deals" involving Costco's donated goods. (D. 19-15, p. 2).

As a result of this investigation, Costco found Nicklin had violated several provisions of Costco's Employee Agreement under Section 11.3 "Causes for Termination," including "interfering with an investigation" and "[a]ny conduct or relationship that jeopardizes your ability to perform your job responsibilities safety, competently, and/or honestly." (D. 19-6, pp. 8–9). It is undisputed that Nicklin took dog food that Costco intended for donation to PRM. He then interfered with the investigation by lying to Iaquinta about paying PRM for the dog food to. (D. 22, ¶ 8 ("*Plaintiff admits to misstating giving money to Taylor as no money ever exchanged hands between Nicklin and Taylor.*")). Costco also found that Nicklin abused his position as a Costco employee by repeatedly soliciting and accepting Costco's goods from PRM delivery drivers, which Costco intended to go to persons in need. (D. 19-14, p. 2; D. 19-2, ¶ 19; D. 19-15, p. 2).These facts show that Nicklin was not meeting Costco's reasonable expectations, and his suspension and termination were the result of Nicklin violating provisions of Costco's Employee Agreement.

16

### c. *Costo's reasons for terminating Nicklin were not pre-textual*

Because Costco offered a legitimate, non-discriminatory reasons for terminating Nicklin, the burden would then shift back to Nicklin to demonstrate Costco's reasons for his termination were a pretext for discrimination. When determining whether an employer's justification is pretextual, "the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it offered to explain" the adverse action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 505 (7th Cir. 2017) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 311 (7th Cir. 2012)) (internal quotation marks omitted). Pretext requires more than a mistaken judgment; it requires a lie. *See id.* (quoting *Argyropoulos*, 539 F.3d at 736).

A court's concern is not that an employer has been wrong about the employee's performance or too hard on the employee; rather, to be pretextual the nondiscriminatory reason must be a lie. *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). Pretext can be demonstrated by identifying weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reason so that a reasonable person could find the reason unworthy of credence. *Id.* at 852–53. But above all, the Seventh Circuit holds that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003).

Here, the record shows that prior to Nicklin's termination Costco thoroughly investigated the allegations about the dog food, interviewing Nicklin several times and numerous PRM personnel, who all disputed what Nicklin was telling Iaquinta and corroborated the Corona's allegations. (D. 19-2, ¶¶ 14–15, 19, 23; D. 19-14, p. 2; D. 19-15, p. 2; D. 19-13, p. 2). Several Costco vice presidents then reviewed Iaquinta's findings and approved his recommendation to terminate Nicklin's employment for violating Costco's Employee Agreement. (D. 19-17, p. 2).

Moreover, it is undisputed Nicklin had been taking goods Costco intended for donation to PRM (for years) and lied to Iaquinta, at a minimum, about paying for the dog food. (D. 19, ¶¶ 18–19, 24, 26-27; D. 22, ¶¶ 4, 8, 10–11). Ultimately, Nicklin cannot survive summary judgment based on this record, and  it is not the court's responsibility to second guess Costco's facially legitimate business decisions. *Ajayi*, 336 F.3d at 532.

There is also no evidence that similarly situated, non-white employees were treated more favorably. To defeat summary judgment, a plaintiff must identify comparators who "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Gates*, 513 F.3d at 690 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 559 (7th Cir. 2011) (reiterating a similarly situated employee must be comparable to a plaintiff in all "material respects"). Here, Nicklin has not provide any evidence of non-white employees who engaged in similarly conduct, namely taking donated items from PRM and then lying about paying for them, who were treated more favorably.

**D.  Nicklin's Retaliation Claim:**

Even if Nicklin had exhausted his retaliation claim with the EEOC, it would still fail on the merits. Nicklin argues he was the subject of retaliation for making previously complaints about his co-workers, including Corona, and submitting prior safety complaints. To establish a claim of retaliation under Title VII, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two.  *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017).  The Seventh Circuit has instructed:

Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal citation omitted). After a thorough review of Plaintiff's internal complaint, the Court finds that his complaint fails to indicate, or to even create an inference, that Nicklin was the subject of discriminatory retaliation because of his age or race. First, Nicklin has presented no evidence that he was engaging in a protected activity under Title VII and suffered an adverse employment action a result. Rather, it is clear that he was soliciting PRM's delivery drivers to meet him off of Costco's property and give him items Costco intended to be charitable donations. He then submitted false statements to Costco's management about what he was doing and whether he in fact paid PRM for the items.

**E. Nicklin's ADEA Claim:**

The ADEA protects individuals who are forty years old or older from employment discrimination based on opposition to their employer's unlawful practices. 29 U.S.C. §§ 623(d), 631(a). A terminated employee may prevail in an ADEA-based claim if he shows that an adverse action would not have occurred but for his employer's discriminatory motive. *Pitasi v. Gartner Grp. Inc*., 184 F.3d 709, 714 (7th Cir. 1999). In analyzing ADEA claims on summary judgment, the courts must determine "whether the evidence would permit a reasonable factfinder to conclude" that plaintiff's opposition to his or her employer's unlawful practices "caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765.

A plaintiff may survive summary judgment by presenting direct or circumstantial evidence sufficient to establish or to create an inference of intentional discrimination. *Montgomery v. Am. Airlines, Inc*., 626 F.3d 382, 393 (7th Cir. 2010) (internal citation omitted). Circumstantial

evidence requires the finder of fact to infer intentional discrimination, while direct evidence is that which proves a fact without requiring an inference. *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 742 (7th Cir. 2008). In practice, direct evidence would require something such as an admission by the employer that they terminated that employee because of their age. Circumstantial evidence, meanwhile, would allow a plaintiff to defeat a motion for summary judgment if he established a *prima facie* case of retaliation. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). Again, the *McDonnell Douglas* burden-shifting framework set forth above may be employed when evaluating these claims.

As an initial matter, the Court notes that Nicklin's claims of age discrimination are based on comments made by two former employees, Mike Bland and Chris Melton, calling him an "old fart, grandpa, and old man" at unspecified times. These employees and comments were not mentioned in Nicklin's EEOC charge. Applying the same standard set forth above, it appears that these claims were not properly exhausted, in addition to being untimely filed. Assuming again that it is properly before the Court, it still fails as a matter of law and do not warrant much discussion. There is no evidence, direct or circumstantial, that Nicklin was discriminated against due to his age. Other employees jokingly calling you an "old fart," or "grandpa," is insufficient to constitute an ADEA claim. There is also no evidence that Nicklin ever reported this to Costco. Finally, as set forth above, Costco had a legitimate, non-discriminatory reason for terminating Nicklin's employment that had nothing to do with his age.

Additionally, Nicklin cannot demonstrate younger, similarly situated employees were treated more favorable than him. Nicklin speculates that the person who took his position was Castro, whose age is unknown. Accordingly, to Nicklin, however, Castro is a long-time ("24-year employee") of Costco who had previously applied for Nicklin's position in 2016 and was found to

20

be qualified. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to this claim.

## VI.    CONCLUSION

For the reasons stated above, Defendant's [18] Motion for Summary Judgment is GRANTED in its entirety. The Clerk is DIRECTED to enter judgment in favor of the Defendant Costco Wholesale Corp.'s and against Plaintiff Raymond A. Nicklin and close this this case.

ENTERED this 6th day of August 2025.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge